1

2

**E-Filed 5/21/10**

3

4

5

6

7

8

9

10        IN THE UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

          SAN JOSE DIVISION

12

13

14   TMX FUNDING, INC., a Delaware corporation,      Case Number C 10-00202 JF (PVT)

15                   Plaintiff,                      ORDER[1] (1) DENYING
                                                     PLAINTIFF'S MOTION FOR
16             v.                                    CIVIL CONTEMPT AND (2)
                                                     GRANTING IN PART AND
17                                                   DENYING IN PART
     IMPERO TECHNOLOGIES, INC., A California         DEFENDANT'S MOTION TO
18   Corporation; CLARENCE NICHOLAS                  STAY OR MODIFY
     STEIGELMAN, An Individual; RONALD J             PRELIMINARY INJUNCTION
19   LESNIAK, An Individual; MITCHELL A
     HEINLEIN, An Individual; JOSEPH ZHANG,          [re doc. nos. 64, 80, 81, 85]
20   a.k.a. XIANGCHOU ZHANG, An Individual;
     MICHELLE DOVER, An Individual; And DAVID
21   LESNIAK, An Individual,

22                   Defendants.

23

24        On March 31, 2010, the Court issued a preliminary injunction (the "Injunction")

25   prohibiting Defendants Impero Technologies, Inc. ("Impero"), Clarence Steigelman

26   ("Steigelman"), Ronald Lesniak ("R. Lesniak"), Mitchell Heinlein ("Heinlein"), Joseph Zhang

27

28        [1] This disposition is not designated for publication in the official reports.

("Zhang"), Michelle Dover ("Dover"), and David Lesniak ("D. Lesniak") (collectively, "Defendants") from retaining certain property and carrying out certain business activities that the Court deemed likely to constitute a misappropriation of trade secrets of Plaintiff TMX Funding, Inc. ("TMX").  TMX seeks an order finding Defendants in civil contempt for failing to comply with the Injunction.  Defendants move to stay the injunction pending their interlocutory appeal or, in the alternative, for modification of the Injunction.  The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on May 7, 2010.  For the reasons discussed below,  Plaintiff's motion will be denied, and Defendants' motion will be granted in part and denied in part.

## I. BACKGROUND

TMX filed the instant action against Defendants on January 14, 2010, asserting several claims for relief including misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code § 3426.1; interference with prospective economic advantage; breach of contract; unfair competition in violation of Cal. Bus. & Prof. Code § 17200, et seq.; and conversion in violation of Cal. Penal Code § 502(e).

**A.    Factual history**

TMX is the purchaser of certain assets and collateral of Teledex, a designer and manufacturer of hotel guest room telecommunication solutions, including wireless broadband internet, analog telephone, and voice-over internet protocol telephone systems.  TMX acquired the assets and collateral of Teledex after the expiration of several forbearance agreements with respect to a loan on which Teledex was the borrower.  The individual Defendants, who were employees of Teledex, were terminated during TMX's purchase of Teledex's assets.  Following their termination, Defendants Steigelman, Zhang, and Heinlein formed Defendant Impero, which operates in the same general field as Teledex.  Defendants R. Lesniak, D. Lesniak, and Dover are not involved with Impero.  Shortly after its acquisition of Teledex, TMX suspected that some of Teledex's property – including laptops and trade secret information – had been taken by the individual Defendants and utilized by Defendant Impero.

2

**B.      Procedural history**

On January 20, 2010, TMX moved for a temporary restraining order ("TRO") and an order to show cause why Defendants should not be enjoined from unlawfully taking, retaining and utilizing property and confidential, proprietary, and trade secret information allegedly belonging to TMX. On January 29, 2010, the Court denied the request for a TRO.  On February 12, 2010, the Court held a hearing on TMX's motion for a preliminary injunction.  The evidence proffered by TMX in support of the preliminary injunction included admissions by several Defendants that they had retained laptop computers belonging to TMX[2] that likely contained confidential and proprietary information, and that on several occasions Defendants had utilized specific information obtained during their tenure at Teledex and not known generally by the public or others in the industry in order to communicate with and generate business from several TMX/Teledex customers and vendors.

In an order dated March 18, 2010, the Court found that Plaintiff had satisfied its evidentiary burden under California law for obtaining a preliminary injunction ("March 18 Order").  The information contained on the missing laptops and in email communications between Defendants and TMX/Teledex clients and vendors met the definition for proprietary information or trade secret under the UTSA, and TMX demonstrated a strong likelihood of misappropriation based on several facts.  In particular, the evidence showed that Defendants proffered sections of a Teledex contract that TMX has been unable to locate since its acquisition of Teledex and that Defendants has  "picked up" the same thread of communications with Teledex clients and vendors – containing content related to potential business deals and negotiations – that they had managed during their employment with Teledex.  TMX also

---

[2] Defendants insist that ownership of the laptops is unsettled.  In granting an injunction, the Court acknowledged Defendants' proffered evidence that R. Lesniak, Teledex's former CEO, gave the laptops to several Defendants to keep based on company policy and because Teledex could not pay its employees after TMX froze Teledex's assets.  The Court nonetheless ordered the return of the laptops based on its determination that the weight of the evidence did not support Defendants' position.  The order issued December 9, 2009 by the Santa Clara Superior Court directed all Teledex officers and employees not to do anything that would "impair, defeat, divert, prevent or prejudice the preservation of the Receivership Estate's assets."

3

1    demonstrated that the alleged misappropriation was hindering its ability to operate Teledex,

2    even after it had taken steps during and after the acquisition to preserve the assets it had

3    acquired.  The Court found that this showing sufficiently established a likelihood of irreparable

4    harm, particularly in light of the presumption of irreparable harm applied by California courts

5    when proprietary information is misappropriated.  *See Western Directories*, 2009 WL1625945 at

6    *6 (N.D. Cal. June 8, 2009); *Lillge*, 2007 WL 2900568 at *7 (N.D. Cal. Oct. 2, 2007).[3]  Finally,

7    because Defendants claimed that they were not utilizing any proprietary information in their new

8    business, the Court concluded that a narrowly tailored injunction would prevent further harm to

9    TMX without unnecessarily infringing upon Defendants' right to work in their chosen field.

10         On March 31, 2010, the Court issued the Injunction, providing that Defendants, "and

11   each of them, and any of their directors, officers, shareholders, partners, subsidiaries, affiliates,

12   employees, employers, agents, representatives, and all those in active concert or participation

13   with them . . . are preliminarily restrained and enjoined from:

14         1.  Failing to return to TMX the Teledex laptops and any other equipment or materials
           containing proprietary, confidential, or trade secret information; and
15
16         2. Soliciting business from customers or third party vendors with whom Defendants had
           been in communication with during their final six months at Teledex for the purpose of
           furthering Teledex business; and
17
18         3. Continuing to do business with customers or third party vendors with whom
           Defendants had been in communication with during their final six months at Teledex for
19         the purpose of furthering Teledex business and from whom Defendants solicited
           business after Deecember 8. 2009."

20   Injunction, Docket No. 62.  The Injunction states explicitly that "[n]othing in this Order shall

21   prevent Defendants from otherwise doing business or continuing to do business with customers

22   or third party vendors." *Id.*  The Court made clear that it had sought to craft a "narrowly tailored

23   injunction [that] should not interfere unduly with [Defendants']ongoing business efforts."

24   March 18 Order.

25         Defendants subsequently appealed the order granting a preliminary injunction and, in the

26

27   _____

28         [3] Defendants challenge the validity of this presumption, which is discussed in detail
     below.

4

1  interim, move to stay or modify the preliminary injunction.  Among other things, Defendants

2  argue (1) that the ownership of certain items subject to the Injunction is still in dispute , (2) that

3  the Injunction interferes impermissibly with their ability to earn a livelihood in their chosen field

4  of work, and (3) that several Defendants should not have been subject to the injunction in the first

5  instance.  Based on Defendants acknowledgment that they have failed to comply with certain

6  aspects of the Injunction, TMX seeks contempt sanctions.

7  ## II.  DISCUSSION

8  As a preliminary matter, because Defendants no longer are represented jointly by the same

9  counsel and take somewhat different positions, the Court when necessary will refer to R. Lesniak

10  and D. Lesniak as the "Lesniak Defendants", to Impero Technologies, Inc., Clarence Steigelman,

11  Mitchell Heinlein, and Joseph Zhang as the "Impero Defendants", and to Michelle Dover as

12  "Dover".

13  **A.    Order to show cause re contempt**

14  **1.    Legal standard**

15  A court may issue civil contempt sanctions for the purpose of coercing a party to comply

16  with a court order, to compensate the party seeking sanctions for losses incurred, or both.

17  *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992).  In order for sanctions to

18  issue, it must be established that the non-moving party knowingly violated a definite and specific

19  order of the court requiring it to perform or refrain from a particular act or acts.  *In re Bennett*,

20  298 F.3d 1059, 1069 (9th Cir. 2002); *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376,

21  1379 (9th Cir. 1986).  The party moving for sanctions must provide "clear and convincing

22  evidence" of the violation, *United States v. Ayres*, 166 F. 3d 991, 994 (9th Cir. 1998), although

23  the failure to comply with the court order need not be intentional.  *Donallco, Inc.*, 787 F.2d at

24  1379.  Generally, the minimum sanction necessary to obtain compliance should be imposed.

25  *Whittaker*, 953 F.2d at 517.  A compensatory sanction is limited to the actual losses sustained by

26  the party seeking a contempt finding.  *Donallco, Inc.*, 787 F.2d at 1379.  The Court also should

27  consider "the character and magnitude of the harm threatened by continued contumacy, and the

28  probable effectiveness of any suggested sanction in bringing about the result desired."  *Id.*

5

1

## 2.    Defendants must comply with the Injunction

2      In the instant case, Defendants clearly were aware of the Injunction, as demonstrated by

3 their interlocutory appeal and by their subsequent motions to stay or modify the Injunction.

4 Defendants D. Lesniak, Zhang, Heinlein, and Steigelman have admitted to being in possession of

5 four Teledex laptops, which they believed in good faith were given to them.  The laptops were

6 turned over to counsel for Defendants between February 19 and March 3, 2010, and they have not

7 been used since then.  Decl. Carol A. Dwyer in Support of Pl.'s Mot. For OSC re Contempt

8 ("Dwyer Decl.") ¶ 8, Ex. 4.  However, the laptops have not been returned to TMX, despite the

9 Court's explicit order and numerous subsequent requests by TMX's counsel.  Dwyer Decl. ¶¶ 4-

10 9.  Thus, under its civil contempt power, the Court may sanction Defendants specifically for their

11 failure to comply with the preliminary injunction.[4]  *See Whittaker*, 953 F.2d at 517-18.

12      As noted previously, Defendants contend that ownership of the laptops remains in dispute

13 and that the Court did not resolve that dispute in issuing the Injunction.  *See* Def.'s App. for Stay

14 of Prelim. Injunc. 14:10-21.  This argument is without merit; although the Court acknowledged

15 the ownership dispute, it found specifically that TMX was likely to prevail and ordered return of

16 the laptops based on that finding.  Perhaps recognizing this, Defendants claim for the first time

17 that they cannot return the laptops until provisions are made to protect their own personal and

18 confidential information, including privileged attorney-client communications and, with respect

19 to two of the laptops, proprietary business information belonging to Impero.

20      Defendants claim that prior to commencement of the instant lawsuit, they used their

21 Teledex laptops to conduct personal affairs such as email and online banking.  The Impero

22 Defendants also used the laptops to conduct Impero business.  After TMX filed suit, both the

23 Impero Defendants and Dover used the laptops to communicate with their attorneys.  Impero

24 Def.'s Further Opp'n to OSC, 2:22-3:2 (citing Decls. Dover, Heinlein, and Steigelman in Support

25

26      [4] Defendants R. Lesniak and Zhang contend that they never had laptops and have
27 declared that they do not have any proprietary information belonging to TMX.  Obviously, they
cannot be held in contempt for failing to return a laptop if they never had one in the first instance.
28 Whether they have other propriety information remains in dispute.

6

1    of Def.'s Further Opp'n to Pl.'s Mot. OSC) .  These Defendants argue that the Injunction

2    requiring the return the laptops did not account for the presence of attorney-client privileged

3    communications and Impero trade secret information.

4         Nonetheless, "[a]bsent a stay, 'all orders and judgments of courts must be complied with

5    promptly.'"  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)

6    (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).  While Defendants moved

7    *ex parte* for a stay or, in the alternative, for modification of the Injunction within a week after the

8    Injunction issued, *see* Def.'s Ex Parte App. for Stay of Prelim. Injunc. (filed 4/7/10), the Court

9    has not granted a stay, and Defendants are required to comply.  *See In re Crystal Palace*, 817

10    F.2d at 1366 (concluding that "[a] party cannot disobey a court order and later argue that there

11    were "exceptional circumstances" for doing so.  This proposed "good faith" exception to the

12    requirement of obedience to a court order has no basis in law, and we reject the invitation to

13    create such an exception.").  Defendants did not assert that the laptops contain their own

14    privileged, private, and trade secret information previously, and their assertion of such a claim at

15    this point does not excuse their non-compliance with the Injunction.

16         **3.**     **Substantial compliance**

17        Defendants argue that they complied substantially with the Injunction by transferring the

18    laptops to their counsel while counsel pending resolution of the concerns just discussed.

19    Specifically, D. Lesniak contends that he "substantially complied with the Court's Order by

20    agreeing to transfer his laptop to [TMX]" and placing it in possession of his attorney.  Lesniak

21    Def.'s Opp'n to OSC at 3:16-17.  D. Lesniak requests only that his personal information

22    contained on the laptop (information relating to preparing a job search, refinancing his home,

23    personal photographs, and personal emails to friends and family) be removed by a neutral IT

24    expert prior to its transfer.  *Id.* at 3:16-24 .  He does not contend his laptop contains attorney-

25    client privileged information or anything relating to the business of Impero, with which he has not

26    been involved.  *See* Decl. of D. Lesniak in Support of App. under F.R.C.P. 62(c) ¶¶ 5, 10 .

27        The Ninth Circuit has recognized "substantial compliance" as a defense to civil contempt,

28    where the action "'appears to be based on a good-faith and  reasonable interpretation of the

7

[court's order].'" *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (citations omitted).  This defense is "not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id.*  The panel in *In re Dual-Deck Video* vacated the district court's civil contempt order because the violations of the protective order at issue were "technical" and did not impinge upon the purpose behind the protective order. *Id.* at 696.  In that case, the protective order prohibited the plaintiff broadly from using any information learned during discovery in subsequent litigation.  The party facing the civil contempt order had referenced its initial discovery in a follow-up lawsuit, but "went to great lengths to avoid revealing in the public filings anything it had learned in discovery." *Id.* at 695-96.  The court concluded that the party had "substantially complied with the order" because it protected the commercial secrets in a manner consistent with the actual purpose behind the protective order. *Id.* at 696.

The purpose of the Injunction with respect to the Teledex laptops is to protect TMX from any continued misappropriation of its proprietary business information and trade secrets.  To the degree that the Defendants who had a laptop promptly sent it to their attorney for safekeeping (even before the Injunction had issued), Defendants may be said to have "substantially complied" with the Injunction, since at that point there was no further possibility that the proprietary information stored thereon could be accessed or utilized improperly.  At the same time, counsel have held possession of the laptops since March 4.  It was not until April 23 that counsel suggested employing a computer forensic analyst to protect Defendants' information.[5] Defendants offer no meritorious explanation for their failure to act affirmatively to return the laptops.

Moreover, TMX filed the instant action on January 14 and applied for a temporary

---

[5] Counsel for the Lesniak Defendants made a similar suggestion via an email sent to counsel for TMX on April 19, in which their counsel proposed that Plaintiff split the cost of "hiring a neutral IT expert" to remove D. Lesniak's personal confidential information.  Decl. of Archie S. Robinson in Opp'n OSC , Ex. A.  Counsel for TMX states that the email address utilized in the April 19 email was incorrect and that the email was not delivered.  Pl.'s Reply to OSC 4:17, fn.1.

Case Number C 10-00202 JF
ORDER (1) DENYING PLAINTIFF'S MOTION FOR CIVIL CONTEMPT, ETC.
(JFEX1)

1    restraining order on January 20.  Defendants' counsel filed a notice of appearance on January 20,

2    putting Defendants on notice since then that TMX was seeking possession of the laptops.  If

3    Defendants used the laptops to communicate with their attorneys after that date, it was with

4    notice that information placed on the laptops could be subject to transfer back to TMX.

5    　　　On balance, Defendants' suggestion – to use a computer forensic analyst to image the hard

6    drives of the laptop computers and redact those portions that contain privileged attorney-client

7    information, attorney work product, and confidential personal financial information – appears to

8    be appropriate.  The analyst would mark any Impero trade secrets or confidential and proprietary

9    information with the designation "Confidential-Attorneys' Eyes Only" pursuant to the Stipulated

10   Protective Order signed by both parties.  *Id.* (citing Decl. of Kara R. Arguello in Support of

11   Impero Def.'s Further Opp'n to Pl.'s Mot. OSC 4:4-13, Ex. B).  The Court will direct the parties

12   to meet and confer to select a special master to oversee the return of the laptops to TMX while

13   protecting the Defendants' personal and confidential information that also may be located on the

14   laptops.  In light of their non-compliance with the Injunction, the individual Defendants who

15   refused to return the laptops will bear the costs of the special master.  The Court reserves the right

16   to reapportion such costs in the interests of fairness depending upon the findings of the special

17   master.

18   **B.    Defendants' motion to stay or modify the Injunction**

19   　　　Defendants move to stay or modify the Injunction.  They argue that the Court misapplied

20   the preliminary injunction standard and that they are likely to prevail on the appeal.  The Lesniak

21   Defendants move separately to stay or modify the Injunction, arguing that TMX has failed to

22   produce sufficient evidence that they have misappropriated trade secrets or caused irreparable

23   injury.  All Defendants contend that the Injunction is not "narrowly tailored" and interferes with

24   their ability to conduct any business in the hospitality telecommunications sector or even retain

25   employment in the hospitality industry.

26   　　　**1.    Legal standards**

27   　　　The Court has discretion to stay the enforcement of judgment pending disposition of

28   Defendants' appeal "'as part of its traditional equipment for the administration of justice.'"  *Nken*

9

1  *v. Holder*, 129 S. Ct. 1749, 1754 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S.

2  4, 9 (1942)).  It must weigh four factors: (1) whether the stay applicant has made a strong

3  showing that he or she is likely to succeed on the merits; (2) whether the applicant will be

4  irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

5  other parties interested in the proceeding; and (4) where the public interest lies.  *Hilton v.*

6  *Braunskill*, 481 U.S. 770, 776 (1987); *see also Thalheimer v. City of San Diego*, 2010 WL

7  1201885, at *2 (S.D. Cal. Mar. 23, 2010).  The "substantial overlap between these [factors] and

8  the factors governing preliminary injunctions" stems from the "similar concerns" present

9  "whenever a court order may allow or disallow anticipated action before the legality of that action

10  has been conclusively determined."  *Nken*, 129 S. Ct. at 1761.  The first two factors are the most

11  critical, and both require "more than a mere possibility" of relief and of irreparable harm  *Id.*

12  (citing *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2009)).

13        The Court may modify an injunction to effectuate its purpose, even during the pendency

14  of an appeal.  *Natural Res. Def. Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 67 (9th

15  Cir. 2001).  However, any modification must preserve the status quo and not materially alter the

16  status of the case on appeal.  *Id.* (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56,

17  58 (1982)).  *See also* Fed. R. Civ. P. 62(c) ("While an appeal is pending from an interlocutory or

18  final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify,

19  restore, or grant an injunction on terms for bond or other terms that secure the opposing party's

20  rights.").  Rule 62(c) "grants the district court no broader power than it has always inherently

21  possessed to preserve the status quo during the pendency of an appeal; it 'does not restore

22  jurisdiction to the district court to adjudicate anew the merits of the case.'" *Southwest Marine*

23  *Inc.*, 242 F.3d at 1167  (quoting  *McClatchy Newspapers v. Central Valley Typographical Union*

24  *No. 46*, 686 F.2d 731, 734 (9th Cir.1982)).

25        **2.**    **Motion to Stay**

26            **a.**    **Likelihood of success on appeal**

27        Defendants' primary contention is that the Court improperly applied a presumption of

28  irreparable harm based upon its finding that TMX was likely to succeed on its misappropriation

10

of trade secrets claim. The Lesniak Defendants argue separately that there is insufficient evidence to support a finding they misappropriated trade secrets or would cause irreparable injury to TMX.

### i. Presumption of irreparable harm from the misappropriation of trade secrets

In *Winter*, the Supreme Court clarified that the preliminary injunction standard requires the party seeking relief to show both that it is likely to succeed on the merits of its claim *and* that it is likely to suffer irreparable harm in the absence of preliminary relief – a mere "possibility" of irreparable harm is insufficient. *Winter*, 129 S.Ct. at 374-75. The Court held that injunctive relief based upon a lesser standard would be "inconsistent with [its] characterization of injunctive relief as an extraordinary remedy." *Id.* at 375-76. Following *Winter*, the Ninth Circuit made clear that "to the extent [its] cases have suggested a lesser standard, they are no longer controlling, or even viable. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Defendants now argue that in light of *Winter* and *Am. Trucking*, district courts no longer may presume the likelihood of irreparable harm for the purpose of granting injunctive relief. *See Jacobson v. Katzer*, 609 F. Supp. 2d 925, 936 (N.D. Cal. 2009) ("Now, a plaintiff is not granted the presumption of irreparable harm upon a showing of likelihood of success on the merits."); *Leatt Corp. v. Innovative Safety Technology, LLC*, 2010 WL 1526382 *9 (S.D. Cal. April 15, 2010) (same). *C.f. Western Directories*, 2009 WL1625945 at *6 (N.D. Cal. June 8, 2009); *Lillge*, 2007 WL 2900568 at *7 (N.D. Cal. Oct. 2, 2007). Defendants contend that the Supreme Court's holding on an analogous issue – that courts will not presume irreparable harm when reviewing requests for injunctive relief in patent infringement cases, *see eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006) – further strengthens their position.

The Court agrees that the language in *Winter* and *Am. Trucking* casts doubt upon the validity of such a presumption, although neither case directly addressed the issue or dealt with an alleged misappropriation of trade secrets under California law. However, even if Defendants are correct that the Court should not have presumed irreparable harm, it does not follow

11

1    automatically that they should prevail on their motion to stay.

2        While the Court *cited* the presumption of irreparable harm in issuing the Injunction, it also

3    found that TMX had shown that Defendants' misappropriation of proprietary information and

4    interference with TMX's business operations was not a speculative possibility, but real and

5    ongoing.[6]  Even without benefit of the presumption, "'intangible injuries, such as damage to

6    ongoing recruitment efforts and goodwill,' can qualify as irreparable harm" in the context of trade

7    secrets misappropriation.  *See Leatt Corp.*, 2010 WL 1526382 at *11 (citing *Rent-A-Center, Inc.*

8    *v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991); *Tracer*

9    *Research Corp. v. Nat'l. Envtl. Serv. Co.*, 843 F. Supp. 568, 578-79 (D.Ariz.1993) (listing

10   damage to reputation and good will as factors supporting the finding of irreparable harm).  Thus,

11   while there obviously is a possibility that Defendants will succeed on the merits of their appeal, it

12   is far from clear whether they have made the requisite "strong showing that [they are] likely to

13   succeed on the merits."  *Hilton*, 481 U.S. at 776.

14                    **ii.    Sufficiency of the evidence against the Lesniak Defendants**

15       The Lesniak Defendants argue that TMX has not produced sufficient evidence that could

16   demonstrate that they have misappropriated trade secrets or could cause TMX irreparable injury.

17   The parties disagree over the appropriate standard of review with respect to the instant motion to

18   stay.  As discussed above, the moving party must show that it is likely to succeed on appeal.  *See*

19   *Saldate v. Adams*, 573 F. Supp. 2d 1303, 1315 (E.D. Cal. 2008) (noting that the moving party

20   failed to make "a sufficient showing that it is likely to succeed on appeal"). On appeal, the Ninth

21   Circuit's "review of an order granting a preliminary injunction is limited to determining whether

22   the order is an abuse of discretion, or based on clearly erroneous findings of fact or on an

23

24        [6] Defendants claim that at least three days before the hearing on the preliminary
     injunction, TMX knew that the Marina Bay Sands Hotel contract negotiation –  one of the
25   business opportunities it claimed to have lost because of Defendants' misappropriation of TMX's
     trade secrets – had not been affected by Defendants' actions at all.  Def.'s App. For Stay of
26   Prelim. Injunc. 10:2-14 (*citing* R. Lesniak Decl., Ex. B).  The exhibit is an email from a person at
     G-Tek Electronics Corporation, disputing any impropriety in connection with the Marina Bay
27   Sands Hotel.  TMX has not conceded that the contents of the email are an accurate description of
     the facts.
28

                                          12

1    erroneous legal standard." *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 644 (9th Cir. 1988).

2    TMX  presented at least some evidence that the Lesniak Defendants have misappropriated

3    at least some form of trade secrets.  It is undisputed that D. Lesniak  possessed a laptop that

4    contained Teleflex's proprietary information.  However, there is no evidence that D. Lesniak's

5    mere possession of the laptop will result in irreparable injury, nor is there evidence that D.

6    Lesniak presently is using or attempting to use the information in any way..

7    TMX points to evidence that R. Lesniak wrongfully conveyed the laptops to the other

8    defendants, but this act is not ongoing.   TMX also presents an email that allegedly references

9    restarting a business relationship with a former Teledex supplier.  *See* TMX's Mot. for TRO at

10   12:2-11 and Declaration of Jose Quiros in Support of TMX's Mot. for TRO, Ex. 14.  In this

11   email, R. Lesniak states that he is "pleased to learn about [the recipient's] loyalty to our new

12   team" and that "[o]ur restart will not be simple".  *Id.*  The Lesniak Defendants now contend that

13   TMX has misconstrued the email and that it was written not to a supplier but to another former

14   Teledex employee.  Lesniak Def.'s Reply in Support of Mot. to Modify or Stay the Injunction, at

15   3:20-26.  The email arguably is ambiguous, but R. Lesniak has not shown that the email was so

16   clearly misconstrued as to render him likely to succeed on the appeal.

17                          **b.     Irreparable injury to Defendants**

18   Defendants contend that they will be irreparably injured absent a stay because the

19   injunction is overbroad and directly and significantly restricts their ability to work in the

20   hospitality communications industry.  Defendants claim that the language of the Injunction

21   implicates any and all business activities by Defendants and their business associates – even

22   activities *not* predicated upon proprietary, confidential, or trade secret information belonging to

23   Teledex and TMX.  They point out that the Injunction encompasses "any of [Defendants'] ...

24   shareholders, partners, subsidiaries, affiliates, [and] employers," which extends beyond the Fed.

25   R. Civ. P. 65(d)(2) list of nonparties who may be bound by a preliminary injunction.  Defendants

26   contend that TMX sought to include employers specifically so that it would constrain the

27   activities of Bittel Americas ("Bittel"), a company that Defendants claim is TMX's only viable

28

                                                  13

1  competitor in the industry.[7]  (Impero Def.'s App. For Stay 5:5-18; 10:25-11:3).

2      It is true that under  Federal Rule 65(d)(2)(B)-(C), an injunction is to be binding upon

3  "parties' officers, agents, servants, employees, and attorneys" and "other persons who are in

4  active concert or participation with anyone described" and who receive actual notice of the

5  injunction.  The rule does not mention employers or other partners and affiliates.  Courts

6  generally look to Rule 65 as limiting the persons bound, based upon whether the nonparty is in a

7  requisite "privity" relationship, restricted to persons so identified in interest with the named

8  parties that it would be reasonable to enforce the order against them.  For example, in *Regal*

9  *Knitwear Company v. N.L.R.B.*, 324 U.S. 9, 14 (1945), the Court held that an injunction issued by

10  the NLRB extending to "successors and assigns" could be enforceable if those persons serve as

11  "instrumentalities through which defendant seeks to evade an order" or if they "come within the

12  description of persons in active concert or participation with them in the violation of an

13  injunction."  As argued by Defendants, the Injunction could not be enforced against the additional

14  parties without a showing of active concert and participation in violation of the Injunction.

15  _____

16      [7] Defendants go to great lengths to describe the makeup of the hospitality
17  telecommunications sector, suggesting that the Court did not have a clear understanding  of the
    nature of the industry when it issued the injunction.  Defendants describe four groups of "main
18  players": (1) hotels; (2) management companies that own and/or manage brands of hotels; (3)
    PBX integrators, which sell, install, and maintain hotel phone system hardware and support
19  services; and (4) equipment sellers, such as TMX, which sell their phones and products to hotels
    through integrators.  Any time a hotel seeks telecommunications equipment or services, it works
20  through the other three groups of  "main players." Defendants argue that because there are only a
    small number of principal players in the sector, each must interact with all of the entities, so that
21  an injunction preventing them "from soliciting business from these contacts can have a major
22  impact on the entire market." Def.'s App. For Stay (quoting Steigelman Decl. ¶¶ 8-11) .

23      Defendants also contend that when TMX absorbed Teledex's assets, it took the majority
    market share of the equipment sellers, leaving Bittel as the only other important player.
24  However, TMX contends that Bittel was launched soon after TMX filed its lawsuit with the
    direct involvement of Zhang and Heinlein, and only was incorporated in February 2010.  Pl.'s
25  Opp'n to Mot. To Stay 11:16-27 (citing Dwyer Decl. Ex. 4-6).  Defendants Zhang, Heinlein,
    Dover and Steigelman were hired by Bittel on February 15, 2010.  TMX also argues that the
26  makeup of the sector is not important, other than the fact that it takes significant time and effort
27  to learn who at a certain hotel has purchasing authority and to discern the purchasing preferences
    of each customer.  The company that has acquired that information has a valuable advantage in
28  soliciting business from the hotel. *Id.* (citing Lawrence Decl. ¶¶ 6-7).

1    Defendants also take issue with the second clause of the Injunction, which restrains them

2    from "[s]oliciting business from customers or third party vendors with whom Defendants had

3    been in communication with during their final six months at Teledex for the purpose of furthering

4    Teledex business."  In granting the Injunction, however, the Court stated that TMX was entitled

5    to relief with respect to "specific to the use of proprietary information belonging to TMX", and

6    that relief did not extend "to Defendants' business activities or to relationships that are not

7    predicated upon proprietary, confidential, or trade secret information belonging to Teledex and

8    TMX."  Because the Injunction itself does not include this limiting language in the second and

9    third clauses, Defendants contend that they and any of their business counterparts effectively are

10   shut out of the hospitality industry.[8]  They also argue that the term "solicit" is vague and leaves

11   them unsure as to whether they would violate the order by responding to a request for proposals

12   from a former, potential, or actual Teledex customer or vendor.

13   TMX argues that a common sense reading of the order reveals exactly what it intended -

14   that Defendants cease to solicit or do business with those Teledex customers and vendors "that

15   they worked with and those leads that they spent time and effort on behalf of Teledex to

16   develop."  Pl.'s Opp'n to Mot. to Stay at 9:20-26.  According to TMX, Defendants' claim that the

17   order is overbroad and unclear as to what is required for compliance is not based on the language

18   of the order but on Defendants' desire not to comply with it.  *See In re Dual-Deck Video Cassette*

19   *Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (defining contempt as "failure to take

20   all reasonable steps in the party's power to comply with the order," but not including a "good

21   faith and reasonable interpretation" of it).

22   _____

23   [8]  Specifically, Defendants argue that the nature of Defendants' former occupation
required communication with any number of companies and contacts in the industry during their
24   last six months at Teledex, all of which the injunction would bar Defendants from contacting,
regardless of whether any trade secret information formed the basis for the contact. Def.'s App.
25   For Stay 11:1-18 (citing Steigelman Decl. ¶ 13; Heinlein Decl. ¶ 8).  Defendants also point out
that the most important annual trade show for the hospitality telecommunications sector took
26   place in June 2009, placing Defendants in the position of having to remember all of the many
people they encountered and with whom they communicated.  *Id.* at 16:4-11 (citing Steigelman
27   Decl. ¶ 4; Heinlein Decl. ¶ 9).

28

15

1      The Court concludes that, irrespective of Defendants' likelihood of success on appeal, any

2   harm to Defendants can be addressed through modification of the Injunction in a manner that

3   clarifies its scope, especially in light of Magistrate Judge Trumbull's recent order that TMX

4   "identify the alleged misappropriated trade secrets with reasonable particularity."  Doc. No. 124.

5   The Impero Defendants also contend that their new business has suffered directly and lost clients

6   as a result of TMX's public relations efforts based on this litigation, and that their viability as a

7   startup is at risk.  The Court recognizes the hardship Defendants have faced since losing their jobs

8   at Teledex, but it cannot base its consideration of irreparable harm on negative publicity over

9   which the Court has no control.

            c.      **Whether issuance of the stay will substantially injure the other parties
                    interested in the proceeding**

11     Modification (as opposed to a stay) also would address the third factor set out in *Hilton*,

12  which is whether issuing the stay would cause substantial injury to other parties interested in the

13  proceeding.  *See* 481 U.S. 770, 776.   TMX contends that if a stay were issued, Zhang, Heinlein,

14  Dover and Steigelman would "use the equipment and trade secrets they unlawfully took from

15  Teledex to compete in the telephone market" through their positions at Bittel, and the laptops

16  may end up indefinitely with Defendants' counsel. Pl.'s Opp'n to Mot. to Stay at 17:18-20.

            d.      **Public Interest**

18     The final factor to be considered on a motion to stay – where the public interest lies –

19  weighs in favor of Defendants' right to maintain their employment in the hospitality

20  telecommunications industry.  However, Defendants may not further their business interests by

21  using proprietary information belonging to Teledex/TMX.  As the Court noted in granting the

22  Injunction, public policy requires that courts "be solicitous for the right inherent in all people . . .

23  to follow any of the common occupations of life."  *Continental Car-Na-Var Corp. v. Moseley*, 24

24  Cal. 2d 104, 110 (1944).  Public policy also seeks "to the fullest extent [to] protect the property

25  rights of employers in their trade secrets and otherwise . . . ." *See id.*  If the Injunction in its

26  current form could be used by TMX "to monopolize the market and to bully smaller

27  competitors," as Defendants contend, then a modification appropriately would restrict the

28

                                                    16

1    Injunction to its intended purpose.

2          **3.    Modification of the Injunction**

3          As defined by the Oxford English Dictionary, 2d Ed, "solicit"means "[t]o entreat or

4    petition ([an entity]) for, or to do, something; to urge, importune; to ask earnestly or persistently."

5    Both Plaintiff and Defendants have submitted proposed modifications to the Injunction and even

6    agree in some respects.  Their disputes focus primarily on (1) how to define the scope of the

7    proprietary, confidential and/or trade secret information, (2) whether to include "employer" as a

8    person bound by the Injunction, (3) and whether to include the Lesniak Defendants as persons

9    bound by the Injunction.

10                **a.    Propriety, confidential, and/or trade secret information**

11          In its current form, the Injunction does not provide a definition of "proprietary,

12    confidential, or trade secret information."  TMX proposes that the terms "shall include but [are]

13    not limited to[:]

14          (a) customer information and business plans and strategies of Teledex; (b) "Proprietary
      Information" as identified in the Teledex Proprietary Information and Inventions
15          Agreement and Confidential Information and Policy Agreement, (c) the primary contact of
      each customer, customer's payment terms, where and how frequently that customer used
16          the services, the customer's personal information; and (d) the specific contacts for
      customers, past communications and agreements between Teledex and customers or
17          vendors, as well as any strategic plans that Teledex developed for its future relationships."

18    TMX's Proposed Modification, Doc. No. 130.  Defendants dispute whether customer

19    information, customer contacts, and customer personal information are protectable trade secrets.

20          TMX points to the Court's factual finding that "Teledex took steps to protect and

21    maintain the secrecy of certain customer information and business plans and strategies by

22    implementing a Proprietary Information and Employee Inventions Agreement and a Confidential

23    Information Policy and Agreement ("Information Agreements")."  March 18 Order at 7:24-27.

24    However, the Court did not refer to all customer information, but only *certain* information that

25    Teledex sought to protect through the Information Agreements.

26          TMX also notes the Court's reference to *See Western Directories, Inc. v. Golden Guide*

27    *Directories, Inc.*, No. C 09-1625 CW, 2009 WL1625945, at *5 (N.D. Cal. June 8, 2009), March

28    18 Order at 8:11-18, which concluded that a password protected advertiser database was a trade

1    secret because it included "the primary contact at each customer; the pricing, including any

2    discount, for the customer's past contracts with [the plaintiff's] competitors; the customer's

3    payment terms; where and how frequently that customer has published advertisements in the past,

4    including advertisements in other media; the customer's past complaints and requests; and the

5    customer's personal information." 2009 WL1625945 at *5.  It is clear from this Court's

6    reasoning in granting the Injunction that protected information was meant to include "specific

7    contacts for customers, past communications and agreements between Teledex and customers or

8    vendors, as well as any strategic plans that Teledex developed for its future relationships", but

9    only to the extent that it was information that "Teledex sought to protect through its Information

10   Agreements".  March 18 Order at 8:22-9:1.

11                    **b.**      **Whether to include employers as persons bound by the Injunction**

12         The Injunction currently applies to the Defendants and "their directors, officers,

13   shareholders, partners, subsidiaries, affiliates, employees, employers, agents, representatives, and

14   all those in active concert or participation with [Defendants]".  Defendants object to the inclusion

15   of "employers", noting that Fed. R. Civ. P. 65(d)(2) provides that an injunction covers "only the

16   following who receive actual notice of it by personal service or otherwise:  (A) the parties; (B) the

17   parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in

18   active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)", a list in which

19   "employers" is absent.  Nonetheless, the Supreme Court has noted that "defendants may not

20   nullify a decree by carrying out prohibited acts through aiders and abettors, although they were

21   not parties to the original proceeding."  *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (U.S. 1945).

22         Completely excluding Defendants' employers from the persons bound by the Injunction

23   essentially would nullify the decree by allowing Defendants' employers to benefit from the trade

24   secrets allegedly misappropriated by Defendants.  To the extent that Defendants' employers may

25   use illicit information supplied to them by Defendants, the employers would be in active concert

26   or participation with Defendants.  Enumerating "employers" with the list of persons merely

27   clarifies the intended scope of the Injunction.  Indeed, an employer only is enjoined from using

28   misappropriated Teledex trade secrets.  Nothing in the Injunction prevents the Defendants – or

18

their employers – from otherwise doing business without using Teledex's trade secret information.

### c. Whether to include the Lesniak Defendants as persons bound by the Injunction

The Lesniak Defendants contend that they should be removed from the Injunction, arguing that they are not involved with Impero, have not contacted former Teledex customers, and do not possess trade secret information. As discussed above, TMX presents varying degrees of evidence against the Lesniak Defendants, contending that they in fact have misappropriated trade secrets and threaten irreparable injury to TMX. The Lesniak Defendants dispute the accuracy and sufficiency of this evidence. While the Court cannot adjudicate anew the merits of the case while the appeal is pending, it appears that there is no evidence that the Lesniak Defendants present any *current or future* threat to TMX's interests. Accordingly, without modifying its previous analysis, the Court concludes that these is no present basis for enjoining the Lesniak Defendants and will modify the Injunction to exclude them.

## III.  DISPOSITION

The parties shall meet and confer regarding the selection of a special master who shall supervise the identification and removal of Defendants' proprietary information from TMX's laptops. The costs of the special master shall be borne by the affected Defendants subject to future order by the Court.  The motion to stay the Injunction will be denied. The motion to modify the Injunction will be granted consistent with the foregoing discussion, and a modified injunction shall issue forthwith.

**IT IS SO ORDERED**

DATED:  5/21/2010

_____
JEREMY FOGEL
United States District Judge

Case Number C 10-00202 JF
ORDER (1) DENYING PLAINTIFF'S MOTION FOR CIVIL CONTEMPT, ETC.
(JFEX1)