**E-Filed 7/9/10**

1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| TMX FUNDING, INC., a Delaware corporation, | Case Number C 10-00202 JF (PVT) |
| Plaintiff, | **ORDER[1] DENYING MOTION FOR RECONSIDERATION** |
| v. | [re doc. no. 148] |
| IMPERO TECHNOLOGIES, INC., A California Corporation; CLARENCE NICHOLAS STEIGELMAN, An Individual; RONALD J LESNIAK, An Individual; MITCHELL A HEINLEIN, An Individual; JOSEPH ZHANG, a.k.a. XIANGCHOU ZHANG, An Individual; MICHELLE DOVER, An Individual; And DAVID LESNIAK, An Individual, | |
| Defendants. | |

On May 20, 2010, the Court modified the existing preliminary injunction (the "Injunction"), removing language prohibiting Defendants Ronald and David Lesniak (the "Lesniak Defendants") from retaining certain property and carrying out certain business activities that the Court deemed likely to constitute a misappropriation of trade secrets belonging

---

[1] This disposition is not designated for publication in the official reports.

to Plaintiff TMX Funding, Inc. ("TMX").  TMX moves for the reconsideration of that order, and the Lesniak Defendants oppose the motion.  The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on July 2, 2010.  For the reasons discussed below, the motion will be denied, without prejudice.

## I.  BACKGROUND

On January 14, 2010, TMX filed the instant action against Defendants Impero Technologies, Inc. ("Impero"), Clarence Steigelman ("Steigelman"), Ronald Lesniak ("R. Lesniak"), Mitchell Heinlein ("Heinlein"), Joseph Zhang ("Zhang"), Michelle Dover ("Dover"), and David Lesniak ("D. Lesniak") (collectively, "Defendants"), asserting several claims for relief including misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code § 3426.1; interference with prospective economic advantage; breach of contract; unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.; and conversion in violation of Cal. Penal Code § 502(e).

### A.    Factual history

TMX purchased certain assets and collateral of Teledex, LLC ("Teledex"), a designer and manufacturer of hotel guest room telecommunication solutions, including wireless broadband internet, analog telephone, and voice-over internet protocol telephone systems.  TMX acquired the assets and collateral of Teledex after the expiration of several forbearance agreements with respect to a loan on which Teledex was the borrower.  R. Lesniak was the president and chief executive officer ("CEO") of Teledex, and D. Lesniak was a field service manager at Teledex.  (R. Lesniak Decl. ISO Defs.' Opp'n to Premil. Injx. ¶ 2; D. Lesniak Decl. ISO Defs.' Opp'n to Prelim. Injx. ¶ 2.)  In connection with the acquisition, GE Capital Corporation ("GECC") confiscated Teledex's assets, including its funds necessary to pay employee wages.  R. Lesniak claims that he terminated all Teledex employees on December 8, 2009.  (R. Lesniak Decl. ISO Defs.' Opp'n to Premil. Injx. ¶ 9.)  R. Lesniak allowed the Teledex employees, including D. Lesniak, to retain possession of the Teledex laptop computers they had used while employed.  (*Id.* at ¶ 10.)  On December 9, 2009, the Santa Clara Superior Court appointed a receiver to take possession of Teledex's property, with the exception of

2

1   "property that relates to membership interests and equity of [Teledex]." (TMX's Complaint, Ex.

2   A at 2:19-20.)  The Superior Court also issued a restraining order against Teledex, its agents,

3   officers, employees, and all persons acting under, in concert with, or for them, forbidding them

4   to "[e]xpend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security

5   interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or

6   any part of [Teledex's] assets without prior Court order." (TMX's Complaint, Ex. A at 9:18-20,

7   10:4-7.)

8          Teledex's corporate counsel, Deborah Ludewig ("Ludewig") instructed her IT

9   professional, Thomas Adler ("Adler"), to copy R. Lesniak's emails and desktop information,

10  believing that it was "likely that communications between GECC and Teledex and company

11  information would be located in those locations." (Ludewig Decl. ¶ 6.)  Ludewig was concerned

12  about the antitrust implications of TMX's purchase of Teledex's assets and was interested in

13  preserving "any evidence relating to communications by and between GECC and TMX and

14  information relating to the status of the Teledex entity at the time of the transaction." (Ludewig

15  Decl. ¶ 4.)  On December 15, 2009, 117 files were copied from R. Lesniak's desktop computer

16  onto compact disks ("CDs"). (McKnight Decl. ¶ 9.)  On December 16, 2009, an additional file

17  from R. Lesniak's computer was copied onto a CD. (*Id.*)  Examples of the names of the files

18  copied onto the CDs include:

19         •   Chart October Presentation Financial ComparisonBook1.xls

20         •   Confidential follow-up.htm

21         •   Confidentiality agreement(v4).DOC

22         •   Confidentiality agreement(v5).DOC

23         •   Purchase Order Dates.xls

24         •   Sales By Category.rtf

25         •   Terms and Conditions for a Purchase Order..htm [*sic*]

26         •   Three Buckets Marketing.xls

27  (*Id.*)  R. Lesniak denies making these copies. (R. Lesniak Decl. ISO Lesniak Defs.' Opp'n to

28  Mot. for Reconsideration, ¶ 2).  Adler also denies having made these copies or having seen

3

1  anyone make them, (Adler Decl. ¶ 11), and Ludewig does not discuss the CDs in her

2  declaration.

3       It is undisputed, however, that Adler met R. Lesniak at Teledex's former facilities on

4  December 16, 2009 in order to copy the files requested by Ludewig. (Adler Decl. ¶ 4.) When

5  Adler arrived at 10:53 a.m., R. Lesniak already was there. (*Id.*) While he was copying the files,

6  Adler noticed that the "CD burner program" on R. Lesniak's desktop computer was active. (*Id.*

7  at ¶ 11.) He attempted to shut down the program, but he was unable to do so, even after

8  referring to Google for information about the program. (*Id.*; *see also* McKnight Decl. ¶ 8

9  (noting that the following Google searches had been performed on R. Lesniak's desktop

10 computer on December 16, 2009:  Windows Files to Burn and Windows Remove Files to Burn.)

11 .)  Adler proceeded to copy R. Lesniak's emails and "desktop information" onto two external

12 storage devices – a Memorex TD Classic ("Memorex drive") and a Seagate FreeAgent ("Seagate

13 drive") (Adler Decl. ¶¶ 5, 13; McKnight Decl. ¶ 4.) – and then delivered the external storage

14 devices to Ludewig. (Adler Dec. ¶ 13.) Ludewig claims that R. Lesniak never had access to the

15 external storage devices. (Ludewig Decl. ¶ 10.)

16      In February 2010, two months after resigning from Teledex, R. Lesniak began working

17 for VTech Corporation ("VTech"), a competitor of Teledex. (R. Lesniak Decl. ISO Lesniak

18 Defs.' Opp'n to Mot. for Reconsideration, ¶ 6-7.) During 2009, VTech and other entities had

19 considered acquiring Teledex. (*Id.* at ¶ 6.)  R. Lesniak prepared possible business plans for

20 VTech and these other entities in connection with the potential acquisition. (*Id.*)  D. Lesniak has

21 been unemployed since TMX's acquisition of the assets of Teledex. (D. Lesniak Decl. ISO

22 Lesniak Defs.' Opp'n to Mot. for Reconsideration, ¶ 4.)

23      TMX appears to have been in possession of R. Lesniak's desktop computer since TMX

24 acquired Teledex's assets in December 2009.  TMX's expert began investigating the contents of

25 this computer's hard drive in April 2010, (TMX's Mot. at 5:20-21), after which TMX

26 discovered that certain files had been copied, as discussed above. D. Lesniak's laptop was in the

27 possession of his attorneys shortly after the instant litigation began, and it was transferred to

28 TMX in May 2010. (TMX's Mot. at 4:24-25.)  TMX's expert began to investigate the laptop's

4

1   hard drive on May 18, 2010.  (McKnight Decl. ¶ 10.)  The expert discovered that the laptop

2   contains local copies of D. Lesniak's Microsoft Outlook emails generated during his

3   employment at Teledex and D. Lesniak accessed these files on February 6, 2010.  (*Id.*)  D.

4   Lesniak denies having accessed his Teledex emails intentionally after he was terminated.  (D.

5   Lesniak Decl. ISO Lesniak Defs.' Opp'n to Mot. for Reconsideration, ¶ 2-3.)

6   **B.    Procedural history**

7       On January 20, 2010, TMX moved for a temporary restraining order ("TRO") and an

8   order to show cause why Defendants should not be enjoined from unlawfully taking, retaining

9   and utilizing property and confidential, proprietary, and trade secret information allegedly

10  belonging to TMX.  On January 29, 2010, the Court denied the request for a TRO.  On February

11  12, 2010, the Court held a hearing on TMX's motion for a preliminary injunction.  The evidence

12  proffered by TMX in support of the preliminary injunction included admissions by several

13  Defendants that they had retained laptop computers belonging to TMX that likely contained

14  confidential and proprietary information, and that on several occasions Defendants had utilized

15  specific information obtained during their tenure at Teledex and not known generally by the

16  public or others in the industry in order to communicate with and generate business from several

17  TMX/Teledex customers and vendors.

18      In an order dated March 18, 2010, the Court found that TMX had satisfied its evidentiary

19  burden under California law for obtaining a preliminary injunction.  The information contained

20  on the missing laptops and in email communications between Defendants and TMX/Teledex

21  clients and vendors met the definition for proprietary information or trade secret under the

22  UTSA, and TMX demonstrated a strong likelihood of misappropriation based on several facts.

23  In particular, the evidence showed that Defendants proffered sections of a Teledex contract that

24  TMX has been unable to locate since its acquisition of Teledex and that Defendants had

25  "picked up" the same thread of communications with Teledex clients and vendors – containing

26  content related to potential business deals and negotiations – that they had managed during their

27  employment with Teledex.  TMX also  demonstrated that the alleged misappropriation was

28  hindering its ability to operate Teledex, even after it had taken steps during and after the

5

1    acquisition to preserve the assets it had acquired.  The Court found that this showing sufficiently

2    established a likelihood of irreparable harm, particularly in light of the presumption of

3    irreparable harm applied by California courts when proprietary information is misappropriated.

4    *See Western Directories, Inc. v. Golden Guide Directories, Inc*, 2009 WL 1625945, at *6 (N.D.

5    Cal. June 8, 2009) (citing *Lillge v. Verity*, 2007 WL 2900568, at *7 (N.D. Cal. Oct. 2, 2007)).[2]

6    Finally, because Defendants claimed that they were not utilizing any proprietary information in

7    their new business, the Court concluded that a narrowly tailored injunction would prevent

8    further harm to TMX without unnecessarily infringing upon Defendants' right to work in their

9    chosen field.

10          On March 31, 2010, the Court issued the Injunction, enjoining Defendants from, among

11   other things, failing to return TMX's confidential, proprietary, and trade secret information.

12   Defendants filed a notice of appeal.  On May 20, 2010, the Court modified the injunction,

13   removing the Lesniak Defendants from its scope and clarifying the bounds of the protected

14   information.  For purposes of the Injunction,

15          "Confidential, Proprietary, and/or Trade Secret Information" shall include but is not
           limited to the following information: (a) business plans and strategies of Teledex,
16         including any strategic plans that Teledex developed for its future relationships, (b)
           "Proprietary Information" and customer information that Teledex sought to protect
17         through its Proprietary Information and Inventions Agreement and Confidential
           Information and Policy Agreements, and (c) past communications and agreements
18         between Teledex and customer or vendors.

19   (Docket No. 141.)  With respect to the Lesniak Defendants, the Court found that TMX had

20   failed to present evidence that they posed any present or future threat to TMX's interests.

21   (Docket No. 140 at 19:9-11.)  Defendants subsequently dismissed their appeal.  TMX argues

22   that its newly-discovered evidence demonstrates that the Injunction should be modified once

23   again to include the Lesniak Defendants.

24   //

25   //

26

27          [2] Defendants previously have challenge the validity of this presumption, which is
28   discussed below.

6

1

## II.  DISCUSSION

2

### A.    Legal standard

3

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

4

clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council,*

5

*Inc.*, 129 S.Ct. 365, 376 (2008).  A party seeking a preliminary injunction must show, "[1] that

6

[it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the

7

absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an

8

injunction is in the public interest." *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d

9

644, 651 (9th Cir. 2009), quoting *Winter*, 129 S.Ct. at 374.  "To the extent that our cases have

10

suggested a lesser standard, they are no longer controlling, or even viable." *Am. Truckin Ass'ns,*

11

*Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  The issuance of a preliminary

12

injunction is committed to the discretion of the district court. *Indep. Living Ctr.*, 572 F.3d at 651.

13

Generally, a court may exercise its "'inherent procedural power to reconsider, rescind, or

14

modify an interlocutory order for cause seen by it to be sufficient.'" *City of L.A. v. Santa Monica*

15

*BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551,

16

553 (5th Cir. 1981)).  However, Civ. L.R. 7-9 controls motions for reconsideration, such as the

17

instant motion.  Under Civ. L.R. 7-9(b)(1), TMX must show both that there is a material

18

difference between the current facts and the facts presented to the court before entry of the order

19

*and* that it has exercised reasonable diligence to discover  such facts.

20

### B.    Reasonable diligence under Civ. L.R. 7-9(b)(1)

21

TMX did not gain possession of D. Lesniak's laptop until May 2010, and TMX began to

22

investigate the contents of that laptop's hard drive on May 18, 2010.  (McKnight Decl. ¶ 10.)

23

Accordingly, TMX has demonstrated reasonable diligence in pursuing the facts regarding its

24

claims against D. Lesniak.  At the same time, TMX has suspected at least since January 14, 2010

25

that R. Lesniak engaged in the theft of proprietary information.  TMX does not dispute that it has

26

had possession of R. Lesniak's desktop computer since its acquisition of Teledex's assets in

27

December 2009, yet TMX's expert did not begin reviewing the desktop computer's hard drive

28

until May 2010.  (McKnight Decl. ¶ 4.)  TMX's expert was able to analyze the hard drive of D.

7

1  Lesniak's laptop in a matter of weeks.  While TMX submitted a significant amount of evidence in
2  connection with its original motion for a preliminary injunction, (*see* Docket No. 13), TMX does
3  not offer any explanation as to why it took months for its expert to begin reviewing the hard drive
4  of R. Lesniak's desktop computer.

5  **C.    Misappropriation of trade secrets**

6        **1.    Likelihood of success on the merits**

7        Under the Uniform Trade Secrets Act ("UTSA"), "misappropriation" is the: "(1)
8  [a]cquisition of a trade secret of another by a person who knows or has reason to know that the
9  trade secret was acquired by improper means; or (2) [d]isclosure or use of a trade secret of
10  another without express or implied consent by a person who: (A) [u]sed improper means to
11  acquire knowledge of the trade secret; or (B) [a]t the time of disclosure or use, knew or had
12  reason to know that his or her knowledge of the trade secret was: (i) [d]erived from or through a
13  person who had utilized improper means to acquire it; (ii) [a]cquired under circumstances giving
14  rise to a duty to maintain its secrecy or limit its use; or (iii) [d]erived from or through a person
15  who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . ."  Cal.
16  Civ. Code § 3426.1(b).

17        **a.    TMX's claim against R. Lesniak**

18        The Injunction defines TMX's confidential, proprietary, and trade secret information as:

19      (a) business plans and strategies of Teledex, including any strategic plans that Teledex
20      developed for its future relationships, (b) "Proprietary Information" and customer
        information that Teledex sought to protect through its Proprietary Information and
        Inventions Agreement and Confidential Information and Policy Agreements, and (c) past
21      communications and agreements between Teledex and customer or vendors."

22  (Docket No. 141.)  At least some of the information copied from R. Lesniak's desktop computer
23  appears to come within this definition.  Adler admits copying the email files of R. Lesniak, (Adler
24  Decl. ¶ 8), who was the president and CEO of Teledex, which likely contain some discussions of
25  TMX's business plans and strategies, protected customer information, and past communications
26  between Teledex and its customers or vendors.

27        R. Lesniak claims that it was not improper for him to acquire the trade secrets and that he
28  was under no duty to maintain the secrecy of that information.  The Superior Court's restraining

8

1    order excluded property that relates to the membership interests and equity of Teledex, and

2    Ludewig contends that this exclusion covers evidence relating to the communications between

3    GECC and TMX.  Even accepting Ludewig's characterization as accurate, it is clear that Adler

4    copied R. Lesniak's emails and other documents on the desktop computer indiscriminately.

5    (Adler Decl. ¶ 8-10.)  While Adler claims that he targeted documents that might contain

6    communications and corporate information, he did not sort or review the documents.  (*Id.* at ¶

7    10.)  Not all communications and corporate information could have related to membership

8    interests and equity in Teledex, and many of them were likely to encompass confidential,

9    proprietary, and trade secret information as defined by the Injunction.

10          Ludewig asserts that she was directed by "the authorities" to preserve "any evidence

11   relating to communications by and between GECC and TMX and information relating to the

12   status of the Teledex entity at the time of the transaction."  (Ludewig Decl. ¶ 4.)  While she

13   claims that she contacted the United States Department of Justice (the "DOJ"), the California

14   Attorney General's Office, and "several other federal and state government agencies, (Ludewig

15   Decl. ¶ 4), she does not identify which specific authority instructed her to preserve this

16   information.  Ludewig does refer to a Civil Investigative Demand ("CID") from the DOJ, seeking

17   "all documents relating to, and communications between GE Capital and Teledex, but not limited

18   to communications relating to Teledex debt owed to GE Capital and any acquisition of Teledex

19   debt, assets, or equity by any person."  (Ludewig Decl. Ex. A.)  However, the CID was dated

20   April 21, 2010, months after Adler copied the Teledex files.  Moreover, Ludewig does not claim

21   that she received a court order allowing her to copy Teledex documents other than those relating

22   to the membership interests and equity of Teledex.

23          R. Lesniak claims that he did not actually acquire the files because he never had access to

24   the external storage devices used by Adler.  Adler declares that he delivered the storage devices to

25   "DJL Corporate Law," (Adler Decl. ¶ 13), which is Ludewig's law firm, (*see* Ludewig Decl. Ex.

26   A (letter from the DOJ to Deborah J. Ludewig, DJL Corporate Law).)  However, the address

27   listed for DJL Corporate Law, 17349 Parkside Court, Monte Sereno, California 95030, (Ludewig

28   Decl. Ex. A), also is the address of R. Lesniak, (*see* Dwyer Decl. Ex. 2 (results of an advanced

9

1    people search, showing R. Lesniak's address).)  Ludewig claims that she delivered the Seagate

2    device to the DOJ, but the DOJ did not confirm receipt of the hard drive until June 16, 2010.

3    (Ludewig Decl. Ex. B.)  Thus, it is likely that R. Lesniak at least had access to the Seagate device

4    from December 16, 2010 to June 2010.  Moreover, Ludewig provides no information as to the

5    current whereabouts of the Memorex device, which presumably remains at the shared address of

6    Ludewig and R. Lesniak.  R. Lesniak also has not provided a credible explanation for the files

7    copied from his desktop computer to CDs on December 15 and 16, 2009.  While R. Lesniak

8    claims that he did not copy these files, his computer is password protected, (Ludewig Decl. ¶ 6),

9    Adler noticed that the CD burner program was active when he arrived at the former Teledex

10   facility on December 16, 2009 at 10:53 a.m., (Adler Decl. ¶ 4), and R. Lesniak already was at the

11   facility when Adler arrived.  (*Id.*)  At least some of the files copied to the CDs appear to be

12   information protected by the Injunction.  Accordingly, TMX has demonstrated that it is likely to

13   succeed on the merits of its claim that R. Lesniak has misappropriated its trade secrets.

14               **b.    TMX's claim against D. Lesniak**

15        TMX alleges that D. Lesniak's laptop contained local copies of his Teledex emails.  D.

16   Lesniak was a field service manager at Teledex.  Neither TMX nor D. Lesniak attempts to explain

17   the job functions of a field service manager.  Thus, it is not clear necessarily that D. Lesniak's

18   email would include:

19        (a) business plans and strategies of Teledex, including any strategic plans that Teledex
          developed for its future relationships, (b) "Proprietary Information" and customer
20        information that Teledex sought to protect through its Proprietary Information and
          Inventions Agreement and Confidential Information and Policy Agreements, and (c) past
21        communications and agreements between Teledex and customer or vendors."

22   Accordingly, TMX has not demonstrated that it is likely to succeed on the merits of its claim that

23   D. Lesniak has misappropriated confidential, proprietary, or trade secret information.

24               **2.    Irreparable harm**

25        In its original order granting injunctive relief, the Court observed that irreparable harm

26   may be presumed upon a showing of the likelihood of success on the merits of a trade-secret-

27   misappropriation claim.  *See Western Directories*, 2009 WL 1625945 at *6 (presuming

28   irreparable harm following a conclusion that the plaintiffs were likely to succeed on the merits of

10

1    a trade secret infringement claim).  The continuing viability of this presumption appeared to be in

2    question following *Winter* and the Supreme Court's prior decision in *eBay Inc. v. MercExchange,*

3    *L.L.C.*, 547 U.S. 388, 393-94 (2006) (concluding that district courts must apply traditional

4    principles of equity – including assessing the likelihood of irreparable harm – when applying a

5    permanent injunction in the context of patent infringement).  Post *Winter*, the Ninth Circuit has

6    reaffirmed the ability of a district court to presume irreparable harm upon a showing of the

7    likelihood of success on the merits of a trademark infringement claim.  *Marlyn Nutraceuticals,*

8    *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (concluding, in a

9    trademark infringement action, that "[b]ecause the court found a likelihood of success on the

10   merits, it reasonably presumed irreparable injury.").  While the Ninth Circuit has not addressed

11   the presumption of harm in a *trade secret* action, it follows reasonably that the presumption

12   remains valid in this circuit following *Marlyn Nutraceuticals*.

13       Nonetheless, while the presumption of irreparable harm was informative, the Court issued

14   the original Injunction in part based on an actual showing of the likelihood of irreparable harm.

15   TMX has not demonstrated how it will be harmed irreparably by D. Lesniak's previous access to

16   his Teledex emails.  D. Lesniak no longer possesses the laptop, and Teledex has not shown that

17   D. Lesniak possesses a copy of these emails or is in any position to use the information in the

18   emails to the detriment of TMX.

19       The evidence is much closer with respect to R. Lesniak.  TMX contends that R. Lesniak is

20   using or plans to use its trade secret information for the benefit of his current employer, VTech.

21   However, although it claims that R. Lesniak was creating VTech business plans while still

22   employed at Teledex, TMX has not provided a copy of such a business plan to the Court, nor

23   does its expert identify documents related to VTech on the hard drive of R. Lesniak's desktop

24   computer.  R. Lesniak admits preparing documents in connection with VTech's inquiries into

25   acquiring Teledex, but TMX does not explain how these documents present the possibility of

26   irreparable harm.  TMX alleges conclusorily that VTech plans to "launch a new line of

27   telecommunication products and services to the hospitality industry by using Teledex

28   confidential, proprietary, and trade secret information that it obtained from [R. Lesniak]."

11

1    (TMX's Mot. At 2:2-3.)  At oral argument, TMX represented that VTech entered the hospitality

2    market only after hiring R. Lesniak.  However, TMX does not identify the new products or

3    services, much less explain how Teledex's protected information is utilized in them.  While R.

4    Lesniak may possess TMX's trade secret information in the form of the CDs and the Memorex

5    device, TMX has not shown that R. Lesniak is likely to use that information in a way that would

6    result in present or future harm to TMX's interests.  When he was hired by VTech, R. Lesniak

7    signed an agreement stating that he would not disclose or use any Teledex confidential

8    information in his work for VTech.  (Delany Decl. ¶ 7 and Ex. 1.)  VTech already has

9    demonstrated its willingness to enforce the agreement by suspending R. Lesniak after the Court

10   issued the original injunction.  (*Id*. at ¶ 8.)

11        The Court previously granted the Injunction upon TMX's showing that other Defendants,

12   after they were terminated from Teledex, had resumed conversations with Teledex customers by

13   using email chains they started while working at Teledex.  TMX also offered concrete evidence

14   that other Defendants possessed copies of contracts between Teledex and Accor, a Teledex

15   customer, and signed a contract with Accor a mere ten days after they were terminated from

16   Teledex.  In contrast, in the context of the instant motion for consideration, TMX has

17   demonstrated only that VTech has hired a person with experience in the hospitality industry and

18   then entered the hospitality industry.  This is insufficient to demonstrate the likelihood of

19   irreparable harm.  While *Marlyn Nutraceuticals* apparently permits the Court to presume

20   irreparable harm, the Court concludes that the application of the presumption against R. Lesniak

21   is unwarranted under the circumstances.[3]

22   //

23

24        [3]  *See Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987)

25   (noting that "[o]nce the plaintiff in an infringement action has established a likelihood of
     confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive

26   relief does not issue," but declining to apply the presumption based on the record in that case

27   because the plaintiff "ha[d] made no independent showing of irreparable harm.")

28

Case Number C 10-00202 JF
ORDER DENYING MOTION FOR RECONSIDERATION
(JFEX1)

1

### 3.  Balance of equities and the public interest

2        The balance of equities also tips in favor of the Lesniak Defendants.  TMX has not shown

3  how an injunction against the Lesniak Defendants would create significant benefit to it, while the

4  livelihood of the Lesniak Defendants would be severely impacted by once again making them

5  subject to the Injunction.  Nick Delany, the president of VTech, declares that he suspended R.

6  Lesniak from employment after learning that the original Injunction included him.  (Delany Decl.

7  ¶ 8.) R. Lesniak was reinstated only after the Injunction was modified, (*id.*), and it is likely that R.

8  Lesniak would be suspended if the Injunction once again was to include him.  Similarly, though

9  D. Lesniak is unemployed, his employment prospects would be severely damaged if he again was

10  subject to the Injunction.  While the public interest favors the protection of legitimate trade

11  secrets, "public policy and natural justice require that equity should also be solicitous for the right

12  inherent in all people . . . to follow any of the common occupations of life." *Continental Car-Na-*

13  *Var Corp. v. Moseley*, 24 Cal. 2d 104, 110 (1944).

14  **C.   TMX's remaining claims**

15        TMX asserts several claims for relief, including breach of contract; unfair competition in

16  violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and conversion in violation of Cal. Penal

17  Code § 502(e).  Regardless of its likelihood of success on the merits of these claims, TMX has

18  not demonstrated that the Lesniak Defendants pose any present or future threat of irreparable

19  harm to TMX's interests in connection with these claims, and no authority exists for presuming

20  irreparable harm in the context of the claims.  D. Lesniak has returned the laptop computer, and

21  TMX has not presented evidence that he threatens harm to its interests, given that he is not

22  competing currently against TMX.  Nor, as discussed above, has TMX shown that R. Lesniak

23  poses any present or future threat to its interests.  While it is likely that R. Lesniak has at least

24  confidential information that belongs to TMX, TMX has not shown that R. Lesniak is using or

25  plans to use that information.  Under *Winter*, a party seeking a preliminary injunction *must* show

26  that it is likely to suffer irreparable harm absent the entry of a preliminary injunction.  *See Am.*

27  *Truckin*, 559 F.3d at 1052.

28  //

Case Number C 10-00202 JF
ORDER DENYING MOTION FOR RECONSIDERATION
(JFEX1)

1

### III.  CONCLUSION

2    While TMX has demonstrated its likelihood of success on the merits with respect to its

3 claim that R. Lesniak has misappropriated trade secrets, its showing of irreparable harm as a

4 result of R. Lesniak's alleged wrongdoing is factually deficient.  With respect to its claims against

5 D. Lesniak, TMX has demonstrated neither a likelihood of success nor a likelihood of irreparable

6 harm.  Accordingly, the motion will be denied without prejudice.  TMX may move for

7 reconsideration if it obtains more specific evidence with respect to its claims.  TMX must show

8 that it exercised reasonable diligence to discover such evidence.

9

10  **IT IS SO ORDERED**

11

12  DATED: 7/8/2010                                    _____

13                                                         JEREMY FOGEL
                                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14