1

2

3

4

5

6

7

8

9

**E-Filed 11/16/10**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TMX FUNDING, INC., a Delaware corporation, | Case No. 5:10-cv-00202 JF/PVT |
| Plaintiff, | **ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | [Docket No. 185] |
| IMPERO TECHNOLOGIES, INC., a California corporation; CLARENCE NICHOLAS STEIGELMAN, an individual; RONALD S. LESNIAK, an individual; DAVID LESNIAK, an individual; MITCHELL A. HEINLEIN, an individual; JOSEPH ZHANG, a.k.a. XIANGCHOU ZHANG, an individual; MICHELLE DOVER, an individual; and BITTEL TECHNOLOGY, INC., a California corporation; | |
| Defendants. | |
| RONALD S. LESNIAK, an individual | |
| Counterclaimant, | |
| v. | |
| TMX FUNDING, INC., a Delaware Corporation; BING SUN, an individual; JOSE QUIROS, an individual; and JAMIE KNIEP, an individual; | |
| Counter-defendants. | |

---

[1] This disposition is not designated for publication in the official reports.

1    Counter-Defendants TMX Funding, Inc. ("TMX") and Bing Sun ("Sun") (collectively,

2    "Moving Counter-Defendants") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the

3    counterclaims of Counterclaimant Ronald S. Lesniak ("R. Lesniak").  The Court has considered

4    the moving and responding papers and the oral arguments of counsel presented at the hearing on

5    November 5, 2010.  For the reasons discussed below, the motion will be granted, with leave to

6    amend.

7                                    **I. BACKGROUND**

8    Twenty-five years ago, R. Lesniak founded Teledex, LLC ("Teledex"), (Counterclaim ¶

9    9), a company that designed and manufactured hotel guest room telecommunication solutions.

10   The allegations are not entirely clear, but it appears that in 1999, Teledex or its parent company

11   incurred approximately $50 million in debt while engaging in the leveraged buyout of TT

12   Systems, LLC ("TT Systems").  (Counterclaim ¶¶ 9, 12.)  Under the terms of the loan, Teledex

13   and TT Systems granted a security interest "in substantially all of their assets . . . " to the

14   lenders.  (Moving Counter-Defendants RJN, Ex. A, App'x 2.)  As part of the buyout, it appears

15   that some entity – it is unclear whether it was a third party or Teledex itself – also purchased

16   some or all of Teledex's outstanding shares.  (Counterclaim ¶ 10.)  R. Lesniak alleges that to

17   secure the loan necessary to complete the buyout, he was required to "reinvest $3 million from

18   the proceeds he received as a shareholder of Teledex" and to consent to "an employment

19   agreement and covenants . . . ."  (*Id.*)  GE Capital Corporation ("GECC") was one of the lenders

20   involved.  (Counterclaim ¶ 11.)  Within two years of the buyout, TT Systems "failed to sustain

21   its business" and "ceased operations."  (Counterclaim ¶ 12.)

22   On March 4, 2003, Teledex's debt was "restructured and reassigned . . . through the

23   Amended and Restated Credit Agreement ('New Credit Facility')," establishing GECC as

24   "Teledex's major lender."  (Counterclaim ¶ 13.)   R. Lesniak alleges that as a result of the New

25   Credit Facility, he "was required to agree to numerous terms," including a non-competition

26   agreement.  (Counterclaim ¶ 13.)  Among other things, the loan would be considered to be in

27   default if R. Lesniak were to step down as chief operating officer of Teledex or if Teledex, TT

28   Systems, or their parent company were to seek bankruptcy protection.  (*Id.*; R. Lesniak's RJN

2

1  Ex. A at 88-89.)

2          Teledex had difficulty servicing the debt.  R. Lesniak alleges that GECC received

3  "various offers [before 2009] from third parties to purchase [Teledex] or its assets for market

4  value, but each offer was refused by GECC" because GECC said that it "preferred to receive

5  regular debt service from Teledex rather than retire its debt at market value through the sale of

6  the company." (Counterclaim ¶ 33.)  In 2009, GECC told R. Lesniak that it intended to sell

7  Teledex's debt, (Counterclaim ¶ 36), and it "encouraged R. Lesniak to lead a management

8  buyout of Teledex." (Counterclaim ¶ 32.)  R. Lesniak allegedly received several term sheets and

9  expressions of interest to purchase Teledex's debt, and each term sheet that he received provided

10 that the employees of Teledex "would receive the amounts due them under their agreements and

11 pursuant to law." (Counterclaim ¶ 37.)  GECC told R. Lesniak on December 4, 2009 that it was

12 aware of no buyers that were interested in Teledex's debt, and it directed him to make an offer

13 during the week of December 7, 2009 to purchase the debt himself. (Counterclaim ¶ 41.)

14 However, at approximately the time R. Lesniak was to make his offer, GECC and TMX

15 informed R. Lesniak that TMX had purchased the debt. (Counterclaim ¶ 42.)  Teledex's assets

16 immediately were frozen, "forcing the termination of the Teledex workforce." (*Id.*)  TMX paid

17 "an amount far greater than the Teledex enterprise market value, as indicated by the third party

18 offers and valuations obtained by R. Lesniak," because the sale "allowed TMX to become a

19 monopoly in its market." (Counterclaim ¶¶ 45, 46.)  TMX foreclosed on Teledex's debt and

20 acquired Teledex's assets as the single bidder at two separate private foreclosure sales.

21 (Counterclaim ¶ 47.)

22          R. Lesniak alleges that since the acquisition, TMX, through certain of its officers and

23 employees, has defamed and harassed him.  He claims that Jamie Kniep ("Kniep"), TMX's

24 "senior financial officer," (Counterclaim ¶ 7), knowingly communicated false statements to

25 former Teledex employees, including statements that Teledex's management had "decided not

26 to ask for funds to continue normal business operations" and "that Teledex management argued

27 against funding the payroll which was to be issued to employees on December 11, 2009,"

28 (Counterclaim ¶ 57.)  R. Lesniak also alleges that Jose Quiros ("Quiros"), TMX's chief

3

operating officer, (Counterclaim ¶ 6), knowingly communicated false statements to former Teledex employees, including a statement that the Teledex employees were terminated abruptly because of R. Lesniak's lack of cooperation with the transition, (Counterclaim ¶ 59).  He asserts that TMX, Quiros, and Sun – TMX's chief executive officer, (Counterclaim ¶ 5) –  made "knowingly false accusations of wrongful and illegal conduct [about R. Lesniak]," including allegations that R. Lesniak "fraudulently over-valu[ed] inventory" and engaged in "the theft of shipping containers [that] TMX deployed to transfer the Teledex assets . . . ," (Counterclaim ¶ 61).  Finally, R. Lesniak alleges that "TMX and [Teledex's] former receiver, Burbank, continue to forward invoices arising from Teledex's business, including income and employee tax bills, employee claims, vendor invoices and other assorted obligations, to R. Lesniak for payment." (Counterclaim ¶ 63.)

On January 14, 2010, TMX filed suit against R. Lesniak and several other defendants, alleging *inter alia* that R. Lesniak was liable for the misappropriation of trade secrets and conversion of personal property.  R. Lesniak has counterclaimed, alleging that TMX, Sun, Quiros, and Kniep (collectively, "Counter-Defendants") are liable for defamation, intentional infliction of emotional distress ("IIED"), and fraud.

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997).  Nonetheless, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).  *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).  The Court's review on a motion to dismiss is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Under

4

1   the "incorporation by reference" doctrine, the Court also may consider documents which are

2   referenced extensively in the complaint and which are accepted by all parties as authentic.  *In re*

3   *Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

4       Leave to amend should be granted unless it is clear that the complaint's deficiencies

5   cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).  In

6   assessing whether to grant an opportunity to amend, the Court considers "the presence or absence

7   of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

8   amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment."

9   *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Moore v. Kayport*

10  *Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)).  When amendment would be futile,

11  dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

12      Finally, although their claims arise under state law, R. Lesniak's allegations are subject to

13  the Federal Rules of Civil Procedure, and Fed. R. Civ. P. 9(b) requires that "a party must state

14  with particularity the circumstances constituting fraud or mistake."  *See Vess v. Ciba-Geigy*

15  *Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in

16  fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the

17  particularity requirement of Rule 9(b)."); and *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994)

18  (claims based in fraud "must state precisely the time, place, and nature of the misleading

19  statements, misrepresentations, and specific acts of fraud.").

20                              **III.  DISCUSSION**

21      Moving Counter-Defendants seek to dismiss all of R. Lesniak's claims with respect to

22  Sun and his claims for IIED and fraud with respect to TMX.

23  **A.    Documents considered by the Court**

24      As discussed above, on a motion to dismiss, the Court may consider documents that are

25  referenced extensively in the complaint and which are accepted by all parties as authentic.  *In re*

26  *Silicon Graphics*, 183 F.3d at 986.  Moving Counter-Defendants request judicial notice of TMX's

27  complaint filed in the instant action.  Attached to that pleading are several loan documents –

28  including excepts of what appears to be the New Credit Facility, (Moving Counter-Defendants'

1   RJN, Ex. A, App'x 1) and a document entitled "Parent Guaranty" signed by R. Lesniak, (*id.*, Ex.

2   A, App'x 2) – that are referenced extensively in the counterclaims.  Accordingly, the Court will

3   take judicial notice of these documents.  R. Lesniak also requests judicial notice of a complete

4   version of the New Credit Facility.  (R. Lesniak's RJN, Ex. A.)  The copy of the New Credit

5   Facility provided by Moving Counter-Defendants is dated March 6, 2003.  From the excepts

6   provided, it is clear that this version differs from the copy of the New Credit Facility provided by

7   R. Lesniak, which is dated March 4, 2003.  In his counterclaim, R. Lesniak alleges that the New

8   Credit Facility is dated March 4, 2003.  (Counterclaim ¶ 13.)  However, the copy he provides is

9   unsigned, while the copy provided by Moving Counter-Defendants is signed.  For purposes of the

10  instant motion, the Court will refer to the copy of the New Credit Facility provided by R. Lesniak

11  because the Court must accept his allegations as true.  The instant motion can be resolved without

12  reference to the other documents of which Moving Counter-Defendants request judicial notice,

13  and the Court will deny the remainder of their request as moot.

14  **B.      Whether Sun is liable for TMX's alleged tortious conduct**

15          R. Lesniak points out that "[a] corporate officer or director is, in general, personally liable

16  for all torts which he authorizes or directs or in which he participates, notwithstanding that he

17  acted as an agent of the corporation and not on his own behalf."  *Coastal Abstract Serv., Inc. v.*

18  *First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999).  However, "'[an] officer or director

19  will not be liable for torts in which he does not personally participate, of which he has no

20  knowledge, or to which he has not consented. . . . While the corporation itself may be liable for

21  such acts, the individual officer or director will be immune unless he authorizes, directs, or in

22  some meaningful sense actively participates in the wrongful conduct.'"  *Frances T. v. Vill. Green*

23  *Owners Ass'n.*, 42 Cal. 3d 490, 504 (1986) ( quoting *Teledyne Indus., Inc. v. Eon Corp.*, 401 F.

24  Supp. 729, 736-37 (S.D.N.Y. 1975) (applying California law)).  Accordingly, to support a

25  reasonable inference of his allegations against Sun, discussed below, R. Lesniak must plead facts

26  that satisfy the standard articulated in *Frances T.*

27  **C.      Defamation (Counterclaim Count 1)**

28          Defamation is "the intentional publication of a statement of fact that is false, unprivileged,

6

1    and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72

2    Cal. App. 4th 637, 645 (1999) (citations omitted).  "Publication means communication to some

3    third person who understands the defamatory meaning of the statement and its application to the

4    person to whom reference is made." *Id.*  With respect to Sun, R. Lesniak alleges only that Sun

5    "maliciously defamed [him] through knowingly false accusations of wrongful and illegal

6    conduct," including "fraudulently over-valuing inventory" and "the theft of shipping containers

7    [that] TMX deployed to transfer the Teledex assets that were under TMX's control . . . ."

8    (Counterclaim ¶ 61.)  However, R. Lesniak does not allege facts that could support a reasonable

9    inference that the statements were untrue, were "published" to a third person, or were

10   unprivileged, *e.g.*, that the statements were made outside of the context of a judicial proceeding,

11   Cal. Civ. Code § 47(b).  While he alleges that other TMX officers made defamatory statements

12   that were published to former TMX employees, R. Lesniak does not allege facts that would

13   support a reasonable inference that Sun "authorize[d], direct[ed], or in some meaningful sense

14   actively participate[d]" in that conduct.  *See Frances T.*, 42 Cal. 3d at 504.  Accordingly, count

15   one of the counterclaims will be dismissed with respect to Sun.  Because the defects conceivably

16   could be cured by amendment, leave to amend will be granted.

17   **D.    IIED (Counterclaim Count 2)**

18          "The elements of a prima facie case for the tort of intentional infliction of emotional

19   distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing,

20   or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

21   severe or extreme emotional distress; (3) and actual and proximate causation of the emotional

22   distress by the defendant's outrageous conduct." *Cervantez v. J. C. Penney Co.*, 24 Cal. 3d 579,

23   593 (1979) (citations omitted).  R. Lesniak asserts that Counter-Defendants are liable for IIED

24   because they have "hidden, concealed, manipulated and/or stolen substantial Teledex assets,"

25   "engaged in a campaign of disparagement of R. Lesniak," and "engaged in a secret transaction for

26   the purpose of creating a monopoly in the third party hospitality telephony market,"

27   (Counterclaim ¶¶ 74-76), causing R. Lesniak to lose his job and to suffer emotional and physical

28   distress.

7

1    Moving Counter-Defendants contend that R. Lesniak's allegations "fail to state sufficient

2    facts to show that the alleged conduct was <u>directed at [R. Lesniak] personally</u> with the intent of

3    causing him emotional distress."  (Counter-Defs.' Mot. at 11:25-27 (emphasis in the original).)

4    *See Hong Soo Shin v. Oyoung Kong*, 80 Cal. App. 4th 498, 512 (Cal. App. 1st Dist. 2000)

5    (quoting *Smith v. Pust*, 19 Cal. App. 4th 263, 274 (Cal. App. 4th Dist. 1993)) (noting that

6    California law requires that a defamatory act be "directed at the plaintiff" or performed "in the

7    presence of the plaintiff.").  They assert that their alleged actions were directed only toward

8    Teledex as a corporation.  However, R. Lesniak alleges sufficient facts to support an inference

9    that the actions alleged were performed at least in part with the intent to oust him from a position

10   of control over Teledex's assets and that he was affected directly by several of the actions alleged.

11   Nonetheless, R. Lesniak's allegations are insufficient to support an inference that the

12   alleged conduct satisfied all of the elements of a prima facie case for IIED.  No facts to support

13   the legal conclusion that R. Lesniak has suffered "*severe* or *extreme* emotional distress."

14   *Cervantez*, 24 Cal. 3d at 593.  R. Lesniak does claim that Counter-Defendants' actions have

15   caused him to suffer "humiliation, mental anguish, and emotional and physical distress, and [that

16   he] has been injured in mind and body," (Counterclaim ¶ 78), but Court need not accept such

17   conclusory allegations of the elements of a tort.  *Sprewell*, 266 F.3d at 988.

18   R. Lesniak alleges that TMX's actions caused him to lose his job, which obviously is a

19   distressing event.  However, the loss of one's job does not automatically give rise to a claim for

20   IIED.  R. Lesniak alleges that TMX and Sun disparaged him, causing injury to his professional

21   reputation and preventing him from obtaining other employment.  However, the counterclaims as

22   presently framed do not spell out the emotional-effects of this alleged conduct.  R. Lesniak also

23   alleges in his opposition papers that TMX and Sun "have informed the former Teledex vendors

24   that they should harass R. Lesniak for any amounts owed by him to them."  (R. Lesniak's Opp'n

25   at 10:7-8.)  While his opposition papers refer to paragraph 61 of the counterclaims for support of

26   that allegation, paragraph 61 in fact alleges that "TMX and [Teledex's] former receiver, Burbank,

27   continue to forward invoices arising from Teledex's business . . . to R. Lesniak for payment."

28   (Counterclaim ¶ 68.)  R. Lesniak does not allege how many invoices he has received or that the

8

1  vendors in fact have engaged in harassing conduct at the direction of TMX or Sun.  Without such

2  detail, the conduct alleged in the complaint is insufficient to support an inference of "severe" or

3  "extreme" emotional distress.  Because these defects conceivably could be cured by amendment,

4  leave to amend will be granted.

5  **E.      Fraud (Counterclaim Count 3)**

6         The elements of actionable fraud consist of "(1) misrepresentation (false representation,

7  concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance;

8  (4) justifiable reliance; and (5) resulting damages." *Okun v. Morton*, 203 Cal. App. 3d 805, 828

9  (Cal. App. 2d Dist. 1988) (citations omitted).  R. Lesniak contends that GECC made fraudulent

10  misrepresentations to him and intentionally concealed facts from him.  He alleges that Counter-

11  Defendants are liable for GECC's fraudulent actions because they "colluded" with GECC.

12  Moving Counter-Defendants contend that they cannot be liable for concealment because R.

13  Lesniak's allegations are insufficiently particular to support a reasonable inference that GECC or

14  Counter-Defendants owed him fiduciary duties.  They also contend R. Lesniak's allegations with

15  respect to fraud and deceit are insufficiently particular to support an inference that Counter-

16  Defendants colluded with GECC to perpetrate the fraud, either through misrepresentations or

17  concealments.  Finally, Moving Counter-Defendants assert that the fraud claim is time-barred.

18         **1.      Whether GECC had a fiduciary duty to R. Lesniak**

19         R. Lesniak contends that GECC is liable for concealment because it owed him a fiduciary

20  duty.[2]  Moving Counter-Defendants point out that the loan was between GECC and Teledex, not

21  between GECC and R. Lesniak personally.  Relatedly, they note that:

22         It has long been regarded as "axiomatic that the relationship between a bank and
         its depositor arising out of a general deposit is that of a debtor and creditor."

23

24         _____

25         [2] "'There are 'four circumstances in which nondisclosure or concealment may constitute
    actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when

26  the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the
    defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes

27  partial representations but also suppresses some material facts.'"  *OCM Principal Opportunities
    Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 859 (Cal. App. 2d Dist. 2007)

28  (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. App. 4th Dist. 1997)).

1

> [Citation.] "A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such." [Citation.] The same principle should apply with even greater clarity to the relationship between a bank and its loan customers.

2

*Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (Cal. App. 1st Dist. 1989) (citations

3

4

omitted). R. Lesniak nonetheless contends that GECC acted differently than a typical lender

5

because the terms of the loan specifically "imposed requirements on him personally." (R.

6

Lesniak's Opp'n at 6:24.) He alleges that the original loan in 1999 obligated him to reinvest $3

7

million in Teledex "as a requirement of continued employment by Teledex," (Counterclaim ¶ 10),

8

and that the New Credit Facility required him to consent to a non-competition agreement[3] and

9

agree not to "transfer or sell any of his Teledex Stock." (Counterclaim ¶ 13(b), (d).)[4] R. Lesniak

10

contends that GECC's "severe restrictions . . . placed him in a position of vulnerability to GECC"

11

and that "GECC knowingly undertook to act on his behalf."

12

　　　"'[B]efore a person can be charged with a fiduciary obligation, he must either knowingly

13

undertake to act on behalf and for the benefit of another, or must enter into a relationship which

14

imposes that undertaking as a matter of law.'" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,

15

43 Cal. 4th 375, 386 (2008) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,

16

35 Cal. 3d 197, 221 (Cal. 1983), *superseded by statute on other grounds as recognized in Gartin*

17

*v. S&M NuTec LLC*, 245 F.R.D. 429, 437 (C.D. Cal. 2007)) (alterations in the original).

18

"'[V]ulnerability 'is the necessary predicate of a confidential relation,' and 'the law treats [it] as

19

'absolutely essential'" *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1161 (Cal.

20

App. 2d Dist. 2005) (quoting *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257,

21

273 (Cal. App. 1st Dist. 2003)). That vulnerability "usually arises from advanced age, youth, lack

22

23

　　[3]　The non-competition agreement required "that he not work for anyone in the business of

24

'distributing telephony-based terminal equipment throughout the world,' should his employment at Teledex end." (Counterclaim ¶ 13(d).)

25

26

　　[4]　R. Lesniak also alleges that the New Credit Facility "required" him to "remain in his position as the Teledex CEO," and "that he not seek bankruptcy protection for Teledex."

27

(Counterclaim ¶ 13(a), (c).) However, the New Credit Facility does not prevent Lesniak from taking action to the contrary, but rather provides that GECC would consider the loan to be in

28

default if such action occurred. (R. Lesniak's RJN, Ex. A at 87-89.)

10

1    of education, weakness of mind, grief, sickness, or some other incapacity." *Richelle*, 106 Cal.

2    App. 4th at 273.  *Richelle* describes conditions that preexist the transaction at issue.  Here, R.

3    Lesniak's alleged  "vulnerability" arose from the after-effects of the transaction:  a $50 million

4    loan that Teledex incurred to engage in the leveraged buyout of TT Systems, that was a

5    transaction intended "to provide liquidity to [Teledex's] early investor and Teledex

6    shareholders," and that was undertaken because Teledex's investors "desired to combine Teledex

7    and TT Systems together and take the combined entities public." (Counterclaim ¶ 10.)  R.

8    Lesniak's allegations do not support an inference that he entered the loan transaction

9    involuntarily or under some type of duress as a result of a preexisting vulnerability of which

10   GECC took advantage.  Because commercial loan transactions between a bank and a lender

11   typically do not result in the creation of fiduciary duties,  *Price*, 213 Cal. App. 3d at 476, the

12   allegations in the counterclaim do not support a contention that GECC "had undertaken a

13   fiduciary obligation 'to act on behalf of and for the benefit of another.'"  *City of Hope*, 43 Cal. 4th

14   at 386 (2008) (quoting *Children's Television*, 35 Cal. 3d at 221 (1983)).

15           **2.      Whether R. Lesniak has alleged sufficiently that Counter-Defendants**

16                    **colluded with GECC**

17           Moreover, even if GECC did knowingly undertake to act on behalf and for his benefit or

18   made affirmative misrepresentations to him, R. Lesniak has not alleged sufficiently that Counter-

19   Defendants colluded with GECC.  Because R. Lesniak does not allege that Counter-Defendants

20   made misrepresentations directly to him or that they owed a direct fiduciary duty to him, this

21   failure is fatal to his fraud claim.[5]  In his opposition papers, R. Lesniak does not direct the Court

22   to any fact that support the consulsory allegation that Counter-Defendants colluded with GECC in

23   perpetrating fraud.  Instead, he directs the Court to various authorities holding that "[w]here there

24   is a common plan or design to commit a tort, all who participate are jointly liable whether or not

25
26           [5]  R. Lesniak alleges that TMX "assumed the rights and obligations of GECC[,] including
     the fiduciary duties GECC owed to Teledex and R. Lesniak." (Counterclaim ¶ 22.)  As discussed
27   above, R. Lesniak has not alleged sufficiently that GECC did owe him a fiduciary duty.  Nor does
     he provide a factual basis sufficient to support his bare contention that TMX did assume those
28   duties if they existed.

                                                       11

1  they do the wrongful acts." *Certified Grocers of Cal. v. San Gabriel Vall. Bank*, 150 Cal. App.

2  3d 281, 289 (Cal. App. 2d Dist. 1983) (citing *Tide Water Associated Oil Co. v. Super. Ct. of Los*

3  *Angeles Cnty*, 43 Cal. 2d 815, 827 (1955)). *See also Neilson v. Union Bank of Cal., N.A.*, 290 F.

4  Supp. 2d 1101, 1127 (C.D. Cal. 2003) (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26

5  (Cal. App. 2d Dist. 1996) (noting that "California law . . . does not require that the aider and

6  abettor owe plaintiff a duty so long as it knows the primary wrongdoer's conduct constitutes a

7  breach of duty, and it substantially assists that breach of duty.").

8       R. Lesniak alleges that GECC refused prior offers to purchase Teledex or its assets,

9  represented to him that it would accept a bid from Teledex's management for the purchase of

10  Teledex's debt while selling the debt to TMX even before hearing whether Teledex's

11  management had a bid to offer, and gave TMX favorable financing for a purchase price of

12  Teledex's debt in "an amount far greater than the Teledex enterprise market value . . . ."

13  (Counterclaim ¶¶ 33, 41-45.)  Even if these actions were improper, R. Lesniak does not explain

14  how Counter-Defendants were involved in GECC's alleged scheme. *See Kaplan*, 49 F.3d at 1370

15  (claims based in fraud "must state precisely the time, place, and nature of the misleading

16  statements, misrepresentations, and specific acts of fraud.").  He claims that TMX paid a

17  "premium price" for Teledex's debt because it would allow "TMX to become a monopoly in the

18  industry," (Counterclaim ¶ 46), but that fact alone does not support a claim that TMX colluded

19  with GECC in defrauding R. Lesniak.  Accordingly, count three of the counterclaims will be

20  dismissed with respect to both TMX and Sun.

21       **3.       Whether the fraud claim is time-barred**

22       The parties agree that the applicable statute of limitations is Cal. Code. Civ. Proc. 338(d),

23  which provides a three-year limitations period for an "action for relief on the ground of fraud or

24  mistake."  Focusing on R. Lesniak's allegations with respect to the 2003 New Credit Facility,

25  Moving Counter-Defendants contend that the claim is time-barred.  However, R. Lesniak alleges

26  that the fraud was committed as late as 2009, when GECC and TMX allegedly "orchestrated the

27  illegal take over of Teledex . . . ."  (R. Lesniak's Opp'n at 8:6-7.)  Assuming that R. Lesniak can

28  amend his claim to cure the defects discussed above, it is not clear that the fraud claim would be

12

1    time-barred.

2                              **IV.  DISPOSITION**

3            For the reasons discussed above, the motion to dismiss is GRANTED with leave to

4    amend.  Any amended counterclaims shall be filed within thirty (30) days of the date of this

5    order.

6

7    **IT IS SO ORDERED**

8

9    DATED: 11/15/ 2010                        _____

                                               JEREMY FOGEL
10                                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                               13